# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**ROBERT PROWELL**                                                                       **PLAINTIFF**

vs.                                                               **CIVIL ACTION NO. 1:08CV273-M-A**

**MICHAEL ASTRUE,**
**Commissioner of Social Security**                                             **DEFENDANT**

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Robert Prowell for a period of disability and disability insurance benefits (DIB) under Section 216(I) and 223 of the Social Security Act and for supplemental security income payments under Section 1614(a)(3) of the Act. Plaintiff applied for benefits on August 1, 2002, alleging that he became disabled on March 12, 2001 due to disorders of the back and affective mood disorders. The plaintiff's claim was denied initially and on reconsideration. Plaintiff, who was unrepresented at the time, filed a request for hearing. He checked the box indicating that he did not want to appear at a hearing and requested a decision to be made based upon the evidence.[1] The ALJ issued an unfavorable decision on May 25, 2004. The Appeals Council granted plaintiff's request for a review and returned the case for further development of the plaintiff's spinal impairments, including a direction to obtain vocational testimony, a consultative orthopedic examination, and medical source statements concerning what the plaintiff could still do despite his impairments. (Tr. 339-41). The Council also directed the ALJ to further evaluate the

---

[1] Despite the fact that Waiver Form HA-4608 is to be completed when a waiver of hearing is requested, no such waiver appears in the record.

claimant's subjective complaints and provide rationale as required by the disability regulations which govern evaluation of symptoms, to further consider the plaintiff's maximum residual functional capacity and provide appropriate rationale by specific references to evidence supporting the assessed limitations, and to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. *Id.*

The ALJ conducted a hearing on June 9, 2005, and on August 17, 2005, issued a second unfavorable decision. Plaintiff again filed a request for review by the Appeals Council which granted the request on December 28, 2005. (Tr.333-35). The ALJ held a second remand hearing on July 6, 2006, and on April 11, 2007, issued a third unfavorable decision. (Tr. 22-27). By letter dated June 30, 2008, the Appeals Council denied plaintiff's request for review. The plaintiff timely filed the instant appeal from the Commissioner's most recent decision, and it is now ripe for review.

## FACTS

The plaintiff was born on August 14, 1949, completed at least seventh (Tr. 46) and possibly eighth grade (Tr. 94). He was fifty-seven (57) at the time of his date last insured, December 31, 2006, and the ALJ's decision on April 11, 2007. (Tr. 150). His past relevant work was as a leadman/expediter at an electric motor factory where he worked for twenty-five (25) years. (Tr. 161). He contends that he became disabled on March 12, 2001 when he began experiencing problems with his lower back, legs and left arm. (Tr. 160).

The ALJ determined that the plaintiff suffered from "severe" impairments including disorders of the back and an affective mood disorder (Tr. 24), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09

2

(2003). The ALJ determined that the plaintiff retains the Residual Functional Capacity (RFC) to perform a wide range of "medium" level work but is limited to jobs that do not require close cooperation and interaction with co-workers and that require no more than occasional contact with the general public. (Tr. 25). In light of testimony by a vocational expert [VE] at the hearing, the ALJ found plaintiff capable of performing his past relevant work as a medium, semi-skilled forklift operator and therefore not disabled under the Social Security Act. (Tr. 27).

Plaintiff claims the following errors:

1. The ALJ did not accord proper weight to the opinions of the treating and consulting physicians in determining that the plaintiff could perform medium work before his date last insured.

2. The Appeals Council should have remanded the plaintiff's case in light of new and material evidence concerning the plaintiff's heart impairment.

3. The ALJ did not properly consider all of the plaintiff's medically determined severe impairments.

Docket 10, p. 1.

## STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[3]

---

[2] *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

[3] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

First, plaintiff must prove he is not currently engaged in substantial gainful activity.[4] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[6] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[7] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[8] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[9]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as

---

[4]20 C.F.R. §§ 404.1520(b), 416.920(b) (2003).

[5]20 C.F.R. §§ 404.1520, 416.920 (2003).

[6]20 C.F.R. § 404.1520(d), 416.920 (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525, 416.925 (2003).

[7]20 C.F.R. §§ 404.1520(e), 416.920(e) (2003).

[8]20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2003).

[9]*Muse*, 925 F.2d at 789.

adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)).

In addition to his severe back disorders and affective mood disorder, the ALJ found plaintiff has non-insulin dependent diabetes mellitus, gastroesophageal reflux disease, possible fibromyalgia, and mild diabetic neuropathy but that they were non-severe impairments. *Id.* He concluded at step three that the plaintiff's limitations did not meet or equal any impairment listed at 20 C.F.R. pt. 404, subpart P., app. 1 (2008). (Tr. 23). In his written decision the ALJ found that plaintiff has the RFC to perform a wide range of medium work in that he

> can lift 50 pounds occasionally and 25 pounds frequently. He can walk and stand for at least six hours out of an eight hour day and sit for at least six hours out of an eight hour day. He can climb, balance, stoop, bend, crouch, crawl, or kneel on an occasional basis. In addition, the claimant is limited to jobs that do not require close cooperation and interaction with co-workers, and jobs that require no more than occasional contact with the general public. The claimant is able to maintain attention and concentration for a minimum of two hours at a time, adapt to changes in the workplace on at least a basic level, and accept supervision on a basic level.

(Tr. 25). The ALJ relied on evidence in the record, including testimony by the VE, to conclude that plaintiff was capable of returning to his past relevant work as a medium, semi-skilled forklift operator, and, therefore, was not disabled under the Social Security Act. (Tr. 27).

## DISCUSSION

Plaintiff contends on appeal that the ALJ's failure to afford proper weight to the opinions of his treating and consulting physicians caused the ALJ to reach a residual functional capacity

5

finding that is not supported by substantial evidence. Docket 12, p. 12. Dr. Joe Hillman has been the plaintiff's treating physician for over thirteen years. Docket 12, p.4. The Commissioner responds that Dr. Hillman's opinion is not entitled to controlling weight because it is inconsistent with his progress notes and conflicts with medical evidence and statements from the relevant period. Docket 11, p.24.

On April 23, 2004, Dr. Hillman completed a Medical Source Statement restricting the plaintiff to a less-than-sedentary work level. (Tr. 300). Dr. Hillman opined that the plaintiff cannot lift more than 7 ½ pounds, stand more than four hours for half an hour at a time, ever climb, balance, stoop, crouch, kneel, or crawl, and that he should be limited in reaching, handling, feeling, pushing and pulling, and restricted from heights, moving machinery, temperature extremes, humidity and vibration. (Tr. 298-302). It was Hillman's opinion that plaintiff's major clinical depression would make interaction with supervisors and co-workers a major problem, and his ability to remember and follow commands was diminished by 75%. (Tr. 300). Dr. Hillman represented that his Medical Source Statement was based upon objective findings and not the plaintiff's subjective complaints. *Id.*

Dr. Logan, a DDS consulting physician, examined the plaintiff once on February 11, 2004, and concluded that he was limited to four hours of standing/walking for half an hour at a time, six hours of sitting for thirty minutes at a time, occasional climbing, balancing, stooping, crouching, kneeling and crawling, and should not be around heights and moving machinery. (Tr. 289-295). The ALJ accorded considerable weight to Dr. Logan's opinion, except, apparently, Dr. Logan's opinion that the plaintiff could not operate moving machinery, which contradicts the ALJ's conclusion that the plaintiff could return to previous work as a forklift operator. (Tr. 26).

6

Dr. Earnest B. Lowe, Jr. examined plaintiff at the request of the state agency on March 10, 2005 and noted that x-rays of his lumbar spine were normal, but his cervical spine showed degenerative changes at C5-6. (Tr. 433). Dr. Lowe also noted that an MRI of plaintiff's neck showed degenerative disk disease with encroachment upon the cord and flattening of the cord at C4-5 and mildly at C5-6, but he concluded that "[t]he correspondence of the MRI to his symptoms were questionable . . . ." *Id.* Dr. Lowe's Medical Source Statement indicated that plaintiff could lift and carry 25 pounds frequently and up to 50 pounds occasionally, that neither his standing/walking, nor sitting was affected by his impairment, that he could occasionally climb, balance, stoop, crouch, kneel, and crawl, and the physical functions of reaching, handling, and feeling were unaffected by the impairment. (Tr. 434-35). The only physical function affected by the impairment, according to Dr. Lowe, was pushing and pulling as a result of cervical pain. (Tr. 435). The ALJ did not indicate whether he afforded any weight to Dr. Lowe's opinions in making his decision (Tr. 22-27), except to say that his opinion was consistent with Dr. Logan's.

The ALJ assigned significant weight to a non-examining state-agency medical consultant (Tr.26) who examined the record on September 24, 2002, shortly after plaintiff filed his claim for disability and before much of the medical evidence was in the record. (Tr. 204-211). The non-examining physician was of the opinion that plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand/walk for six hours, and sit for six hours (Tr. 204-205) had no postural or manipulative limitations. (Tr. 206-07). Based upon a review of the non-examining state-agency physician's Functional Capacity Assessment form, it does not appear that he had any treating or examining source statements to review or consider in formulating his opinion.

7

(Tr. 210).

For an ALJ properly to afford lesser weight to the treating physician's medical opinions he must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Because the ALJ did not follow these criteria, says plaintiff, his refusal to afford controlling weight to Dr. Hillman's opinions was error as a matter of law. The Commissioner argues that *Newton* does not apply to this case because the record provides "good cause" for the ALJ's finding that the treating physician's opinion was not entitled to controlling weight. Docket 11, p. 24.

Reading the record as a whole, the court concludes that the ALJ's opinion is unsupported by substantial evidence and should be remanded for further consideration. An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further provide "additional evidence or clarification *will* be sought" [emphasis added by the court] "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(2)(1), 416.912(e)(1). Additionally, "[a]n 'ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position'" *Morgan v. Astrue*, 2010 WL 2697170, *8 (N.D.Tex. July 7, 2010) (citing *Loz v. Apfel*, 219 F.3d 378,393 (5th Cir. 2000).

A treating physician such as Dr. Hillman, who has seen the plaintiff regularly for at least thirteen years, has a unique perspective regarding the plaintiff's abilities, limitations, medical

8

history and diagnosis. At the least, Dr. Logan, a one-time examining physician, would have a better perspective of the plaintiff's abilities, limitations, medical history and diagnosis than the non-examining physician who did not have all of the medical evidence to review at the time of the opinion provided.

Although the ALJ assigned Dr. Hillman's opinions only "minimal weight" and Dr. Logan's opinions "considerable weight," he completely ignored the fact that both Dr. Hillman and Dr. Logan indicated that the plaintiff was restricted from operating moving machinery. It may be that there is substantial evidence to deny the plaintiff's claims, but it is unclear whether the ALJ considered all of the necessary factors before declining to afford controlling weight to Dr. Hillman's opinion and ignoring portions of the medical opinions of other examiners, including years-long treatment by various Veteran's Administration facilities, to give the most weight to the by then over 4-year old opinion of a non-examining physician. For example, the ALJ rejected Dr. Hillman's opinion that plaintiff had severe depression which was resistant to treatment because the ALJ found that the plaintiff "has not sought any mental health treatment until recently." (Tr. 26). To the contrary, plaintiff had been seeking assistance for his depression from both Dr. Hillman and the VA since at least 2003. (See, e.g., Tr. 396, 401).

As another example of mis-interpretation of the record, the ALJ's opinion states:

> [T]he claimant's treatment team at the Veteran's Administration Hospital clearly stated that the claimant is very somatic and expectant of being treated with pain medication. The claimant's treating physician at the Veteran's Administration also noted that there is no physical explanation for the claimant's alleged pain levels.

(Tr. 26). This portion of the record was taken out of context and cannot realistically be interpreted in the manner the ALJ suggests. The records from the VA actually indicate that the

9

plaintiff was in pain during a visit to a VA *mental health* physician for treatment of his depression and was advised that the mental health physician could not prescribe pain medication, but instead would have to receive pain medication from the physical medicine physicians. (Tr. 396). The mental health physician's record simply relates that the plaintiff told him that plaintiff experienced chronic pain and did not believe any physical explanation had been found; the mental health physician merely commented that he found it "interesting that no physical explanation has been found." *Id.* The mental health physician's statement that plaintiff's treatment for depression was complicated by a tendency to somatize his emotional conflicts was hardly a proclamation that plaintiff's complaints were not real.[10]

Further, it is clear that additional development of the record, specifically in the form of additional opinions from the treating physician, would have been easily obtained, and probably helpful, had the ALJ sought such information. In such a case as this, where the ALJ wishes to rely on a non-examining physician and accord a treating physician of thirteen years "minimal weight," the Commissioner should contact the treating physician. 20 C.F.R. § 404.1509p(b) (2000). The undersigned holds that the decision of the Commissioner should be remanded for further proceedings consistent with this opinion.

### PLAINTIFF'S REMAINING ARGUMENTS

Because this action is being remanded to the ALJ for further evaluation of the treating and examining physician's records and opinions and for analysis to be conducted in accordance with *Newton* and applicable sections, the court need not address the merits of the plaintiff's

---

[10]**Somatization:** in psychiatry, the conversion of mental experiences or states to bodily symptoms. *Dorland's Illustrated Medical Dictionary*, 1663 (W.B. Saunders Co., 2000).

remaining arguments at this time.

## CONCLUSION

A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 27th day of July, 2010.

                                            /s/ S. Allan Alexander
                                            UNITED STATES MAGISTRATE JUDGE